**E-FILED**
Wednesday, 03 August, 2022  09:51:02 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD, ILLINOIS**

| | | |
|---|---|---|
| DANIEL CODY, as Administrator of the Estate of JAIMESON CODY, deceased and as next-of-kin. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  3:22-cv-03065-SEM-KLM |
| SANGAMON COUNTY; ANDREW VAN METER, SANGAMON COUNTY CHAIRMAN; SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY; LARRY BECK, JAIL SUPERINTENDENT; SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; NICHOLAS ORTEGA, C.O.; ADVANCED CORRECTIONAL HEALTHCARE; JOHN B. KLING, LPN; OTHER UNKNOWN SANGAMON COUNTY EMPLOYEES and/or AGENTS; and EMPLOYEES and/or AGENTS OF ADVANCED CORRECTIONAL HEALTHCARE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) ) | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

**NOW COMES** Plaintiff, DANIEL CODY, as Administrator of the Estate of JAIMESON CODY, deceased and as next-of-kin, by and through his undersigned attorneys, and for this First Amended Complaint against Defendants SANGAMON COUNTY; ANDREW VAN METER, SANGAMON COUNTY CHAIRMAN; SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY; LARRY BECK, JAIL SUPERINTENDENT; SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; NICHOLAS ORTEGA, C.O.; ADVANCED CORRECTIONAL HEALTHCARE; JOHN B. KLING, LPN; OTHER UNKNOWN SANGAMON COUNTY EMPLOYEES and/or AGENTS, and OTHER UNKNOWN EMPLOYEES and/or AGENTS OF ADVANCED CORRECTIONAL HEALTHCARE, hereby states as follows:

PLAINTIFF'S EXHIBIT A
PAGE 1 OF 23

## PRELIMINARY STATEMENT AND NATURE OF CASE

1.      Jaimeson Cody, a 39-year-old father of two and citizen of the United States of America and the State of Illinois, was admitted as a pretrial detainee of the Sangamon County Sheriff's Department and its jail in Springfield, Illinois on April 27, 2021. Mr. Cody's belongings were confiscated at booking, his mental state started to rapidly deteriorate, and he was placed on 24-hour observation. Hours later, he was forcibly removed from his cell for a medical exam against his will, he was then tackled, tasered, beaten and suffocated, deprived of emergency medical care, treatment, or assistance of any kind. Mr. Cody died on April 28, 2021, on the concrete floor of the Sangamon County Jail.

2.      This suit arises from multiple violations of the civil rights of Jaimeson Cody, in violation of Title 42 USC § 1983.

## JURISDICTION

3.      This action is brought pursuant to 42 USC § 1983.  Jurisdiction is based upon 28 USC § 1331, 1332 and 1367.  Plaintiff demands a trial by jury.

## VENUE

4.      The violations of civil rights alleged herein were committed within the Central District of Illinois, to-wit:  in the City of Springfield, County of Sangamon, State of Illinois.  This action properly lies in the United States District Court for the Central District of Illinois, Springfield Division.

## PARTIES

5.      Plaintiff, DANIEL CODY, is the decedent's father and is the Court-appointed Administrator of the Estate of JAIMESON CODY. He is a resident of the County of Sangamon, State of Illinois. He brings this action on behalf of the Estate of JAIMESON CODY, for the benefit of decedent's beneficiaries and next-of-kin.

6.      Decedent, Jaimeson Cody, was a U.S. Citizen and a resident of the County of Sangamon, State of Illinois, as of the date of his death on April 28, 2021.

7.      Defendant, SANGAMON COUNTY, ("Sangamon County") is the local government municipality for Sangamon County, Illinois.

PLAINTIFF'S EXHIBIT A
PAGE 2 OF 23

8.     Defendant, SANGAMON COUNTY SHERIFF'S DEPARTMENT, ("Sangamon County Sheriff's Department") is a local governmental entity with offices in Sangamon County, City of Springfield, Illinois.

9.     Defendant, ANDREW VAN METER, SANGAMON COUNTY CHAIRMAN, ("Chairman Van Meter") was a resident of Sangamon County, Illinois at the time of the events herein, and is sued in his individual and his official capacity as chairman of the Sangamon County Board wherein he is responsible for establishing and maintaining the policies, practices, customs, and usages of Defendants Sangamon County and/or Sangamon County Sheriff's Department.

10.     Defendant, JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY ("Sheriff Campbell"), was a resident of Sangamon County, Illinois at the time of the events herein, and is sued in his official capacity as Sheriff of Sangamon County, Illinois, wherein he is responsible for establishing and maintaining the policies, practices, customs, and usages of Defendant Sangamon County Sheriff's Department.

11.     Defendant, LARRY BECK, JAIL SUPERINTENDENT ("S.I. Beck"), was a resident of Sangamon County, Illinois at the time of the events herein, and is sued in his official capacity as Superintendent of the Sangamon County Jail, wherein he is responsible for establishing and maintaining the policies, practices, customs, and usages of Defendants Sangamon County and/or Sangamon County Sheriff's Department, and its employees and agents within the Sangamon County Jail.

12.     Defendant, SGT. CODY GRIGSBY, C.O., ("Sgt. Grigsby") was a resident of the State of Illinois at the time of the events described herein and was employed, retained and/or contracted by Defendants Sangamon County and/or Sangamon County Sheriff's Department. He is sued in his individual and official capacities, and as an agent of said Defendants.

13.     Defendant, KYLE MEYER, C.O., ("C.O. K. Meyer") was a resident of the State of Illinois at the time of the events described herein and was employed, retained and/or contracted by Defendants Sangamon County and/or Sangamon County Sheriff's Department. He is sued in his individual and official capacities, and as an agent of said Defendants.

14.     Defendant, SCOTT MEYER, C.O., ("C.O. S. Meyer") was a resident of the State of Illinois at the time of the events described herein and was employed, retained and/or contracted by Defendants Sangamon County and/or Sangamon County Sheriff's Department. He is sued in his individual and official capacities, and as an agent of said Defendants.

15.     Defendant, NICHOLAS ORTEGA, C.O., ("C.O. Ortega") was a resident of the State of Illinois at the time of the events described herein and was employed, retained and/or contracted by Defendants Sangamon County and/or Sangamon County Sheriff's Department. He is sued in his individual and official capacities, and as an agent of said Defendants.

16.     Defendant, ADVANCED CORRECTIONAL HEALTHCARE, ("A.C.H.") is an Illinois Corporation with offices in the City of Springfield, Illinois who was employed, retained and/or contracted by Defendants Sangamon County and/or Sangamon County Sheriff's

PLAINTIFF'S EXHIBIT A
PAGE 3 OF 23

Department to provide appropriate medical services, care, and treatment to pretrial detainees at the Sangamon County Jail, including Jaimeson Cody.

17.     Defendant, JOHN B. KLING, LPN, ("Nurse Kling") was a resident of the State of Illinois at the time of the events described herein, was employed, retained and/or contracted by Defendants Sangamon County, Sangamon County Sheriff's Department, and/or A.C.H., as a nurse to provide medical and nursing treatment to pretrial detainees at the Sangamon County Jail. He is sued in his individual and official capacities, and as an agent of said Defendants.

18.     Defendant, OTHER UNKNOWN SANGAMON COUNTY EMPLOYEES, and/or AGENTS, ("Other Unknown Defendants") are persons employed, retained and/or contracted by the various Defendants and are sued in their individual and official capacities and as agents of the various Defendants.

19.     At all times relevant to the matters stated in this Complaint, Defendants Sangamon County, Sangamon County Sheriff's Department, and A.C.H. maintained a contractual partnership whereby A.C.H. would provide healthcare and healthcare management services to individuals detained at the Sangamon County Jail.

20.     At all times relevant to the matters stated in this Complaint, all Defendants acted under color of state law, and within the scope of their employment and/or agency.

## STATEMENT OF CLAIM

21.     At all times relevant to the matters stated in this Complaint, there was in force and effect the Constitution of the United States which provided in relevant part as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> – Constitution of the United States, Amendment X IV

22.     At all times relevant to the matters stated in this Complaint, there was in force and effect a federal law known as the Civil Rights Act of 1871 which provided in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. §1983.

PLAINTIFF'S EXHIBIT A
PAGE 4 OF 23

23.     At all times relevant to the matters stated in this Complaint, there was in force and effect certain statutes in the State of Illinois which provided in relevant part as follows:

Sheriff custodian of courthouse and jail.

He or she shall have the custody and care of the courthouse and jail of his or her county, except as is otherwise provided. 55 ILCS 5/3-6017.

* * *

The Sheriff of each county in this State shall be the warden of the jail of the county and have the custody of all prisoners in the jail, except when otherwise provided in the "County Department of Corrections Act". The Sheriff may appoint a superintendent of the jail, and remove him at his pleasure, for whose conduct and training, he shall be responsible. The Sheriff shall also be responsible for the hiring and training of all personnel necessary to operate and maintain the jail. 730 ILCS 125/2 and  3.

* * *

The Warden of the jail shall furnish necessary bedding, clothing, food and medical aid for all prisoners under his charge, and keep an accurate account of the same. 730  ILCS 125/17.

24.     Jaimeson Cody was arrested in Divernon, Illinois, on April 27, 2021, at 01:21 by Officer Thomas Hiatt of the Divernon (Illinois) Police Department.

25.     At 01:26, Officer Hiatt began transporting Mr. Cody to the Sangamon County Jail. During transport, Mr. Cody was confused why he was being arrested but made very little conversation.

26.     At 01:46, Mr. Cody was delivered to the Sangamon County Jail, and Officer Hiatt placed Mr. Cody in the care, custody, charge, and control of the Sangamon County Jail.

27.     At booking, Mr. Cody's belongings were confiscated, and he was searched. Mr. Cody was provided with a Sangamon County Jail inmate uniform and placed alone in Cell I-9 of the Sangamon County Jail by Correctional Officer B. Ferro ("C.O. Ferro").

28.     Defendants were aware, or should have been aware, of Mr. Cody's prior drug history. Despite this knowledge, Mr. Cody was not seen or examined by any medical personnel at the time of his booking.

29.     After being placed alone in Cell I-9, Mr. Cody was observed by Defendants to be shaky, sweating profusely, pacing around, confused, and displaying erratic behavior.

30.     At or around 12:30, C.O. Ferro took Mr. Cody to the medical unit within the Sangamon County Jail to be provided medical care and treatment. In the medical unit, Defendants were advised of Mr. Cody's symptoms and behavior, and Mr. Cody was given an assessment by employees or agents of the Sangamon County Jail.

PLAINTIFF'S EXHIBIT A
PAGE 5 OF 23

31.     After being medically assessed by employees or agents of the Sangamon County Jail, Mr. Cody was placed in cell I-1 of the Sangamon County Jail. Mr. Cody was designated in the Sangamon County Jail Shift Activity Report as "H/R [HIGH RISK] MH [Mental Health]". As a result, Defendants placed Mr. Cody on required high risk mental health checks to be performed every 15 minutes.

32.     Despite designating Mr. Cody to have high risk mental health issues, Mr. Cody was not evaluated or checked upon every 15 minutes as dictated in the Shift Activity Report.

33.     Despite his known history and obvious medical decline, no treatment of any kind was provided to Mr. Cody by any Defendant.

34.     Nurse Kling was working in the Sangamon County Jail and assigned to the unit where Mr. Cody was confined.

35.     Nurse Kling checked on Mr. Cody in his cell at or around 18:30 and 20:10 and noted that Mr. Cody was up and moving around in his cell. These were the only two checks on Mr. Cody by any medical professional between 12:30 and 23:45.

36.     At or about 23:45, C.O. S. Meyer observed blood smeared in Mr. Cody's cell and on his clothing; that he had small cuts to his hands and wrist areas; and that Mr. Cody was covered in sweat and mumbling to himself about S.W.A.T. and being shot in his head.

37.     C.O. S. Meyer notified Sgt. Grigsby of his observations of Mr. Cody.

38.     Sgt. Grigsby observed Mr. Cody and contacted Nurse Kling to come to Mr. Cody's cell.

39.     Nurse Kling arrived at Mr. Cody's cell and, through the closed door, observed blood on Mr. Cody's shirt and some on the wall of his cell.

40.     C.O. S. Meyers, Sgt. Grigsby, and several other Defendants then opened the door to Mr. Cody's cell for Nurse Kling to examine Mr. Cody.

41.     Nurse Kling observed that Mr. Cody seemed to be in a good mood, but that he did not want to be examined by Nurse Kling. Mr. Cody told Nurse Kling that he was okay and to leave him alone.

42.     Despite Mr. Cody's refusal for medical care at this time, C.O. S. Meyers, Sgt. Grigsby, and several other Defendants then ordered Mr. Cody to come out of his cell to be examined by Nurse Kling.

43.     Mr. Cody became agitated when ordered to come out of his cell to be examined by Nurse Kling, and Mr. Cody again refused medical care.

PLAINTIFF'S EXHIBIT A
PAGE 6 OF 23

44.     Mr. Cody made no attempt to flee.

45.     Mr. Cody did not provoke any of the Defendants.

46.     Despite his clear refusals for medical care, C.O. S. Meyers, Sgt. Grigsby, and several other Defendants then entered Mr. Cody's cell and began an altercation with Mr. Cody to forcibly remove him to be examined. During this altercation, the Defendants tasered Mr. Cody and threw him down into the concrete jail floor.

47.     After tasering and throwing him into the concrete jail floor, Defendants tasered Mr. Cody again and placed him face down in a prone position.

48.     After being tasered, thrown into the concrete jail floor, and placed face down in a prone position, two or three of the defendants who are grossly obese correctional officers tackled onto Mr. Cody and applied their entire body weight (estimated to be over 700 pounds) to Mr. Cody's neck, back and legs. Mr. Cody pleaded with Defendants that he could not breathe but his pleas were ignored.

49.     While Mr. Cody was face down on the concrete jail floor, after having been tasered multiple times and with two or three grossly obese correctional officers and their entire body weight on his neck, back and legs, while pleading that he could not breathe, Defendants ordered Mr. Cody to put his arms behind his back. Mr. Cody was not able to put his arms behind his back, at which point Defendants began tasering Mr. Cody again until he became motionless.

50.     After Mr. Cody became motionless, his hands were placed in cuffs behind his back, and the two or three grossly obese correctional officers climbed off his body. By this point, Mr. Cody had been beneath their combined weigh for several minutes unable to breathe before, during, and after being tasered.

51.     After climbing off Mr. Cody's body, Defendants began discussing how to get Mr. Cody into a restraint chair, presumably to have the medical examination he had been refusing all along. Mr. Cody remained motionless and face down in a prone position on the concrete jail floor with his hands cuffed behind his back as this discussion took place.

52.     After their discussion about a restraint chair, Defendants returned to Mr. Cody's body and observed that Mr. Cody's ear lobe was purple in color and his cheek/face had discolored with a blue/purple color.

53.     Defendants shook Mr. Cody to get him to respond, with no success. They observed that he was not breathing.

54.     Defendants removed Mr. Cody's cuffs and rolled him onto his back. Nurse Kling came over to begin CPR. Nurse Kling did not feel any pulse but started CPR anyway. After becoming fatigued, an unknown defendant correctional officer took over the CPR procedure. Mr. Cody was never revived.

PLAINTIFF'S EXHIBIT A
PAGE 7 OF 23

55.     Several Defendants, including C.O. Ortega and S.I. Beck, were aware of but stood by and watched the attack upon Mr. Cody occur, yet none did anything to intervene to prevent the excessive and deadly force used which caused his suffocation and death, nor did any Defendant attempt to provide appropriate medical care, treatment, or intervention for Mr. Cody while he was being killed.

56.     An ambulance was called, and Mr. Cody was transported to Springfield Memorial Medical Center where he was pronounced dead at 00:32 on April 28, 2021.

57.     An autopsy was conducted on April 28, 2021, by forensic pathologist, Nathaniel Patterson, M.D., who identified the following injuries to Mr. Cody:

    a.  Blunt force injuries of the head and neck;
    b.  Blunt force injuries of the trunk;
    c.  Various contusions of the head, scalp, neck, face, back and extremities;
    d.  Electrical weapon control wounds of the thighs;
    e.  Numerous other abrasions;
    f.  Erythema of the skin of the chest and upper abdomen; and
    g.  Self-inflicted, superficial abrasions to the left forearm and wrist.

58.     Dr. Patterson concluded that Mr. Cody's death was ultimately caused by restraint asphyxia.

59.     The investigation by Sangamon County Coroner, Jim Allmon, found Mr. Cody's manner of death to be a homicide.

60.     A grainy, low-quality video was released to the public by Defendants Sangamon County; Chairman Van Meter; Sangamon County Sheriff's Department; Sheriff Campbell; and S.I. Beck, after negative media and public outcry. This video did *not* show the altercation between Mr. Cody and the various Defendants. Rather, it shows various Defendants at Mr. Cody's cell door, then skips to what appears to be Mr. Cody, motionless on the jail floor and at least one to two officers on the floor by Mr. Cody. This video contained a critical 90-second gap during the time the tasering, beating and suffocation that took place between Mr. Cody and the various Defendants. The video also shows numerous other unknown defendants standing around, but none appearing to assist Mr. Cody in any way.

61.     Prior to April 27, 2021, each of the Defendants had actual or constructive knowledge that:

    a.  compressional force and tasers should not be used in combination with restraints that could restrict breathing;
    b.  sitting on the neck or back of a person they are trying to restrain can lead to great bodily harm or death;
    c.  tasers should not be used on individuals who are no threat of flight or immediate harm to others;

PLAINTIFF'S EXHIBIT A
PAGE 8 OF 23

d. since 2006, the U.S. Department of Justice, in conjunction with the Police Executive Research Forum ("PERF") published standards for the use of Conducted Energy Devices (CED's), which include the taser devices used on Mr. Cody, which direct that: "Following a CED activation, officers should use a restraint technique that does not impair respiration;

e. since March 1, 2007, Taser International, which manufactured the taser devices used by Defendants on Mr. Cody, had published product warnings and updates to law enforcement agencies for use of its taser devices, which warned: "Avoid torturous or other misuse," and ". . . it is conceivable that the muscle contractions may impair a subject's ability to breathe," referring to the use of a taser device;

f. as far back as 2007, there have been other known violations of the constitutional rights of pretrial detainees in the Sangamon County Jail resulting in death by positional asphyxia;

g. there has been a clear and consistent pattern of abuses against pretrial detainees resulting in death by excessive/deadly compressional force or asphyxia within the Sangamon County Jail;

h. there has been a clear and consistent pattern of abuses against pretrial detainees resulting in death by excessive/deadly force using tasers within the Sangamon County Jail;

i. they support and/or tacitly approve of the indiscriminate use of tasers as, according to Sheriff Campbell, "we don't feel you can fire (tasers) too much. You use a taser until the person complies with our order";

j. their policies, practices, customs, and usages have been the moving force and/or causal link to multiple violations of constitutional rights of pretrial detainees in the Sangamon County Jail;

k. their widespread practices are approved by and reflective of the direct policy decisions of the various Defendants; and

l. they have not properly hired, educated, trained, implemented, enforced, or supervised training for their employees and/or agents to correct their known deficiencies, and this failure has been and is likely to cause further injury.

62.    Defendants Chairman Van Meter, Sheriff Campbell, and S.I. Beck each have specific, direct, and personal knowledge of prior constitutional violations against pretrial detainees in the Sangamon County Jail that resulted in death of the pretrial detainee as a direct result of acts or omissions of employees and/or agents of Sangamon County and the Sangamon County Jail.

63.    Defendants were on notice that their policies, practices, customs, and usages had caused a clear and persistent pattern of violating constitutional rights of pretrial detainees in the Sangamon County Jail.

64.    Despite their knowledge, the Defendants – particularly Chairman Van Meter, Sheriff Campbell, and S.I. Beck – knowingly, deliberately, and recklessly approved and allowed the continuation of those policies, practices, customs, and usages which directly and proximately caused the death of Mr. Cody on April 28, 2021, in violation of Mr. Cody's Constitutional rights.

PLAINTIFF'S EXHIBIT A
PAGE 9 OF 23

65.     Defendants, by their acts or omissions as set forth above, have ignored a history of abuse, and were clearly on notice that the training in this area was constitutionally deficient and likely to cause injury.

66.     Despite their knowledge, the Defendants failed and/or refused to properly educate, train, implement, enforce, and supervise their employees and/or agents, and by failing to do so, the Defendants were deliberately indifferent and acting in reckless disregard to the obvious and known risks of serious injury or death to pretrial detainees such as Mr. Cody.

67.     Defendants, by their acts or omissions as set forth above, showed deliberate indifference and reckless disregard to Mr. Cody's serious and known medical and mental health condition. As the direct and proximate result thereof, Mr. Cody suffered excruciating pain and suffering, and ultimately death, in violation of his Constitutional rights.

68.     Each of the Defendants, by their acts or omissions as set forth above, authorized, participated in, and/or acquiesced in the violations of Mr. Cody's Constitutional rights.

69.     The Court has authority pursuant to 42 U.S.C. § 1983 to award appropriate actual, consequential, compensatory, and punitive damages, and has authority under 42 U.S.C. § 1988 to award attorney's fees and costs to successful civil rights plaintiffs.

## CAUSES OF ACTION

### COUNT I.
### USE OF EXCESSIVE/DEADLY FORCE
**Deprivation of Fourteenth Amendment Rights and 42 U.S.C. §1983**
**as to all Defendants**

70.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

71.     Each of the Defendants had a duty to refrain from using excessive or deadly force against Mr. Cody.

72.     Each of the Defendants had a duty to prevent others from using excessive or deadly force against Mr. Cody.

73.     Each of the Defendants were aware, or should have been aware, that force which is harsh and cruel beyond the point of control and likely to cause death or great bodily harm is excessive.

74.     Each of the Defendants knew, or reasonably should have known, that Mr. Cody was becoming increasingly ill and suffering from a declining mental health state, but, despite this knowledge, Defendants used excessive and/or deadly force upon Mr. Cody.

PLAINTIFF'S EXHIBIT A
PAGE 10 OF 23

75.     The force the Defendants used against Mr. Cody was harsh and cruel beyond the point of control, likely to great bodily harm or death, and did, in fact, cause Mr. Cody's death.

76.     Each of the Defendants allowed their co-defendants to use excessive and/or deadly force on Mr. Cody, and all failed to intervene to prevent Mr. Cody's unnecessary physical abuse, punishment, humiliation, suffering and/or death.

77.     The conduct and actions of the Defendants, acting under color of law, was unreasonable, intentional, willful, malicious, and with a deliberate indifference and/or reckless disregard to Mr. Cody's health, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of his constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

78.     Each of the Defendants knew Mr. Cody faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain and suffering, and ultimately death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT II.
### <u>FAILURE TO PROVIDE MEDICAL CARE/DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS</u>
**Deprivation of Fourteenth Amendment Rights and 42 U.S.C. §1983 as to all Defendants**

79.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

80.     Each of the Defendants had a duty to take reasonable measures in response to the obvious medical and mental health needs and risks posed by Mr. Cody's condition.

81.     Each of the Defendants were aware that Mr. Cody's condition was deteriorating yet took no appropriate action to provide medical care or treatment for Mr. Cody, disregarding the obvious risks to Mr. Cody's health.

82.     Each of the Defendants were aware that failing to provide and/or denying medical care to Mr. Cody's as he was being killed was likely to result in great bodily harm or death, and yet took no appropriate action to provide appropriate medical care or treatment for Mr. Cody, disregarding the obvious risks to Mr. Cody's health.

PLAINTIFF'S EXHIBIT A
PAGE 11 OF 23

83.     The conduct and actions of the Defendants, acting under color of law, in failing to provide and/or denying medical attention for Mr. Cody was unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for his serious medical needs, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of his constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

84.     Each of the Defendants knew Mr. Cody faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain and suffering, and ultimately death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

### COUNT III.
### <u>MONELL CLAIM – USE OF EXCESSIVE/DEADLY FORCE</u>
### 42 U.S.C. §1983 as to SANGAMON COUNTY and SANGAMON COUNTY SHERIFF'S DEPARTMENT

85.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

86.     At all times relevant to this Complaint, Sangamon County and Sangamon County Sheriff's Department, acting through its employees and/or agents, including the other various Defendants, maintained policies, practices, customs and usages for their employees and/or agents:

    a. permitting complete discretion to interpret any written policies for themselves without limitation or further direction, concerning the use of excessive and/or deadly force;

    b. encouraging the indiscriminate use of tasers whenever they individually choose, even to punish or torture, and even where there was no threat of flight or immediate harm to others;

    c. encouraging the use of restraint techniques that restrict breathing, in combination with the use of a taser;

    d. encouraging the use of restraint techniques that restrict breathing upon pretrial detainees who have already been tasered;

    e. encouraging officers to sit on the neck or back of a person they are trying to restrain;

    f. discouraging the use of reasonable force and non-lethal control tactics when dealing with mentally ill pretrial detainees of the Sangamon County Jail;

    g. discouraging intervention or providing of aid to pretrial detainees being subjected to excessive and/or deadly force by officers of the Sangamon County Jail;

PLAINTIFF'S EXHIBIT A
PAGE 12 OF 23

    h.   encouraging individuals to "look the other way" while pretrial detainees are being subjected to excessive and/or deadly force by officers of the Sangamon County Jail; and

    i.   which refuse to properly train, monitor, supervise, or ensure staff and/or agents utilize proper protocol and procedures concerning the use of tasers and control tactics, hands-on force, and compressional force on pretrial detainees.

87.    The conduct of the Defendants as set forth herein was a direct and foreseeable consequence of the policies, practices, customs, and usages of Sangamon County and Sangamon County Sheriff's Department. As such, said Defendants directly caused the violations of Mr. Cody's constitutional rights and are liable for the damages suffered because of the conduct of their employees and/or agents.

88.    As a result of the above-described policies, practices, customs and usages, the Defendants believed that their actions and/or inaction would not be properly monitored by supervisory personnel, and that such misconduct would not be investigated or sanctioned, but rather would be tolerated and encouraged.

89.    The wrongful policies, practices, customs, and usages complained of herein demonstrate a deliberate indifference by the Defendants as to the constitutional rights of persons in the Sangamon County Jail and were the direct and proximate cause of the violations of Mr. Cody's constitutional rights as set forth herein.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT IV.
### MONELL CLAIM – FAILURE TO PROVIDE MEDICAL CARE/DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### 42 U.S.C. §1983 as to SANGAMON COUNTY; SANGAMON COUNTY SHERIFF'S DEPARTMENT; and ADVANCED CORRECTIONAL HEALTHCARE

90.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

91.    At all times relevant to this Complaint, Sangamon County, Sangamon County Sheriff's Department, and A.C.H., each acting through its employees and/or agents including the other various Defendants, had policies, practices, customs and usages for their employees and/or agents:

PLAINTIFF'S EXHIBIT A
PAGE 13 OF 23

a. encouraging them to confine pretrial detainees in a manner that intentionally ignores the obvious signs of medical distress of pretrial detainees in the Sangamon County Jail;

b. permitting the medical staff complete discretion to provide medical and mental health services to pretrial detainees in the Sangamon County Jail without sufficient supervision and training;

c. permitting the medical staff complete discretion in determining whether or not to provide health and mental care services, including but not limited to, the administration of medication to pretrial detainees;

d. relying on federal law (HIPAA) erroneously as an excuse for not providing pertinent medical and/or mental health information regarding the health of pretrial detainees;

e. encouraging those who witness other employees and/or agents causing respiratory distress, failure and ultimate death to pretrial detainees, of not verbally advising said persons that their actions were causing respiratory distress, failure, and possible ultimate death;

f. discouraging them from providing necessary medical care or treatment to pretrial detainees who are in medical distress while in the custody of the Sangamon County Jail; and

g. which refuse to properly train, monitor, supervise, or ensure staff and/or agents utilize proper protocol and procedures concerning pretrial detainees who are in medical distress while in the custody of the Sangamon County Jail.

92. The conduct of the Defendants as set forth herein was a direct and foreseeable consequence of the policies, practices, customs, and usages of Sangamon County, Sangamon County Sheriff's Department, and A.C.H. As such, said Defendants directly caused the violations of Mr. Cody's constitutional rights set forth herein and is liable for the damages suffered because of the conduct of their employees and/or agents.

93. As a result of the above-described policies, practices, customs, and usages, Sangamon County, Sangamon County Sheriff's Department, and A.C.H. placed Mr. Cody at a substantial risk of suffering serious harm.

94. Sangamon County, Sangamon County Sheriff's Department, and A.C.H. knew Mr. Cody faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain and suffering, and ultimately death.

95. As a result of the above-described policies, practices, customs and usages, A Sangamon County, Sangamon County Sheriff's Department, and A.C.H. believed that their actions and/or inaction would not be properly monitored by supervisory personnel, and that such misconduct would not be investigated or sanctioned, but rather would be tolerated and encouraged.

96. The wrongful policies, practices, customs, and usages complained of herein demonstrate a deliberate indifference by A Sangamon County, Sangamon County Sheriff's Department, and A.C.H. as to the constitutional rights of pretrial detainees in the Sangamon

PLAINTIFF'S EXHIBIT A
PAGE 14 OF 23

County Jail and were the direct and proximate cause of the violations of Mr. Cody's constitutional rights as set forth herein.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT V.
## ILLINOIS CLAIM – USE OF EXCESSIVE/DEADLY FORCE
### as to LARRY BECK, JAIL SUPERINTENDENT; SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; NICHOLAS ORTEGA, C.O.; JOHN B. KLING, LPN; and OTHER UNKNOWN SANGAMON COUNTY EMPLOYEES, and/or AGENTS

97.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

98.     Each of the Defendants, including S.I. Beck, Sgt. Grigsby, C.O. K. Meyer, C.O. S. Meyer, C.O. Ortega, Nurse Kling, and Other Unknown Defendants had a duty to refrain from using excessive or deadly force against Mr. Cody.

99.     Each of the said Defendants had a duty to take prevent others from using excessive or deadly force against Mr. Cody.

100.     Each of the said Defendants were aware, or should have been aware, that force which is harsh and cruel beyond the point of control and likely to cause death or great bodily harm is excessive.

101.     Each of the said Defendants knew, or reasonably should have known, that Mr. Cody was becoming increasingly ill and suffering from a declining mental health state, but, despite this knowledge, Defendants used excessive and/or deadly force upon Mr. Cody.

102.     The force that said Defendants used against Mr. Cody was harsh and cruel beyond the point of control, likely to great bodily harm or death, and did, in fact, cause Mr. Cody's death.

103.     Each of the said Defendants allowed their co-defendants to use excessive and/or deadly force on Mr. Cody, and all failed to intervene to prevent Mr. Cody's unnecessary physical abuse, punishment, humiliation, suffering and/or death.

104.     The conduct and actions of the said Defendants, acting under color of law, was unreasonable, intentional, willful, malicious, and with a deliberate indifference and/or reckless disregard to Mr. Cody's health, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of his rights under the constitution and laws of the State of Illinois.

PLAINTIFF'S EXHIBIT A
PAGE 15 OF 23

105.    Each of the said Defendants knew Mr. Cody faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain and suffering, and ultimately death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT VI.
### ILLINOIS CLAIM – FAILURE TO PROVIDE MEDICAL CARE/DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
**as to LARRY BECK, JAIL SUPERINTENDENT; SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; NICHOLAS ORTEGA, C.O.; JOHN B. KLING, LPN; and OTHER UNKNOWN SANGAMON COUNTY EMPLOYEES, and/or AGENTS**

106.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

107.    Each of the Defendants, including S.I. Beck, Sgt. Grigsby, C.O. K. Meyer, C.O. S. Meyer, C.O. Ortega, Nurse Kling, and Other Unknown Defendants had a duty to take reasonable measures in response to the obvious medical and mental health needs and risks posed by Mr. Cody's condition.

108.    Each of the said Defendants were aware that Mr. Cody's condition was deteriorating yet took no appropriate action to provide medical care or treatment for Mr. Cody, disregarding the obvious risks to Mr. Cody's health.

109.    Each of the said Defendants were aware that failing to provide and/or denying medical care to Mr. Cody's during the foregoing events was likely to result in great bodily harm or death, and yet took no appropriate action to provide appropriate medical care or treatment for Mr. Cody, disregarding the obvious risks to Mr. Cody's health.

110.    The conduct and actions of the said Defendants, acting under color of law, in failing to provide and/or denying medical attention for Mr. Cody was unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless disregard for his serious medical needs, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of his rights under the constitution and laws of the State of Illinois.

111.    Each of the said Defendants knew Mr. Cody faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. As a direct and proximate

PLAINTIFF'S EXHIBIT A
PAGE 16 OF 23

result of the foregoing, Mr. Cody was subjected to great physical and emotional pain and suffering, and ultimately death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

**COUNT VII.**
**ILLINOIS CLAIM – INSTITUTIONAL NEGLIGENCE**
**as to SANGAMON COUNTY; ANDREW VAN METER, SANGAMON COUNTY CHAIRMAN; SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY; LARRY BECK, JAIL SUPERINTENDENT**

112. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

113. At all times relevant to this Complaint, Sangamon County and Sangamon County Sheriff's Department were the primary institutions responsible for the care, custody and control care of pretrial detainees in the Sangamon County Jail.

114. At all times relevant to this Complaint, Chairman Van Meter, Sheriff Campbell, and S.I. Beck, were the persons vested with primary authority and responsibility regarding policies, practices, customs, and usages of Sangamon County and Sangamon County Sheriff's Department.

115. At all times relevant to this Complaint, said Defendants had an independent institutional duty to supervise and ensure the appropriate and safe use of tasers and control tactics, hands-on force, and compressional force by their employees and/or agents within the Sangamon County Jail.

116. At all times relevant to this Complaint, said Defendants, acting through its employees and/or agents including the other various Defendants, had policies, practices, customs and usages of discouraging their employees and/or agents from appropriately and safely using tasers and control tactics, hands-on force, and compressional force on pretrial detainees in the Sangamon County Jail.

117. At all times relevant to this Complaint, said Defendants, acting through its employees and/or agents including the other various Defendants, had policies, practices, customs and usages which refused to properly train, monitor, supervise, or ensure staff and/or agents utilize proper protocol and procedures concerning the use of tasers and control tactics, hands-on force, and compressional force on pretrial detainees in the Sangamon County Jail.

118. As a result of the above-described policies, practices, customs, and usages, said Defendants believed that their actions and/or inaction would not be properly monitored by

17

supervisory personnel, and that such misconduct would not be investigated or sanctioned, but rather would be tolerated and encouraged.

119.    The wrongful policies, practices, customs, and usages complained of herein by said Defendants created an unreasonably safe environment for pretrial detainees within the Sangamon County Jail and were the direct and proximate cause of the violations of Mr. Cody's rights as set forth herein.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT VIII.
## ILLINOIS CLAIM – INSTITUTIONAL NEGLIGENCE
### as to SANGAMON COUNTY; ANDREW VAN METER, SANGAMON COUNTY CHAIRMAN; SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY; LARRY BECK, JAIL SUPERINTENDENT

120.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

121.    At all times relevant to this Complaint, Sangamon County and Sangamon County Sheriff's Department were the primary institutions responsible for the care, custody, and control of pretrial detainees in the Sangamon County Jail.

122.    At all times relevant to this Complaint, Chairman Van Meter, Sheriff Campbell, and S.I. Beck were the persons vested with primary authority and responsibility regarding policies, practices, customs, and usages of Sangamon County and Sangamon County Sheriff's Department.

123.    At all times relevant to this Complaint, said Defendants had an independent institutional duty to supervise and ensure that appropriate medical care was provided safely by their employees and/or agents to pretrial detainees in the Sangamon County Jail

124.    At all times relevant to this Complaint, said Defendants, acting through its employees and/or agents including the other various Defendants, had policies, practices, customs and usages of discouraging their employees and/or agents from providing necessary medical care or treatment to pretrial detainees who are in medical distress while in the custody of the Sangamon County Jail.

125.    At all times relevant to this Complaint, said Defendants, acting through its employees and/or agents including the other various Defendants, had policies, practices, customs and usages which refused to properly train, monitor, supervise, or ensure staff and/or agents utilize

PLAINTIFF'S EXHIBIT A
PAGE 18 OF 23

proper protocol and procedures concerning pretrial detainees who are in medical distress while in the custody of the Sangamon County Jail.

126.    As a result of the above-described policies, practices, customs, and usages, said Defendants believed that their actions and/or inaction would not be properly monitored by supervisory personnel, and that such misconduct would not be investigated or sanctioned, but rather would be tolerated and encouraged.

127.    The wrongful policies, practices, customs, and usages complained of herein by said Defendants created an unreasonably safe environment for pretrial detainees within the Sangamon County Jail and were the direct and proximate cause of the violations of Mr. Cody's rights as set forth herein.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

### COUNT IX.
### <u>ILLINOIS CLAIM – WRONGFUL DEATH</u>
### as to all Defendants

128.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

129.    At all times relevant to this Complaint, Defendants Sangamon County, Sangamon County Sheriff's Department, and A.C.H. maintained a contractual relationship for the provision of medical services to pretrial detainees in the Sangamon County Jail.

130.    Each of the said Defendants, either individually and/or through their employees and/or agents, breached the appropriate standards of care and were negligent in causing the death of Mr. Cody.

131.    As a proximate result of one or more of the foregoing acts or omissions, Mr. Cody sustained injuries which resulted in his death on April 27 and April 28, 2021.

132.    Mr. Cody left two surviving children who have suffered pecuniary loss because of his death.

133.    DANIEL CODY is the Court-appointed Administrator of the Estate of JAIMESON CODY and as such brings this cause of action on behalf of the Estate of JAIMESON CODY pursuant to Chapter 70, Sections 1 and 2 of the Illinois Revised Statutes, commonly known as the Wrongful Death Act of the State of Illinois.

PLAINTIFF'S EXHIBIT A
PAGE 19 OF 23

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT X.
## ILLINOIS CLAIM – SURVIVAL ACTION
### as to all Defendants

134.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

135.    As a proximate result of one or more of the foregoing acts or omissions, Mr. Cody sustained injuries which resulted in his death on April 27 and April 28, 2021, and had conscious pain and suffering before his death, and had he survived, he would have been entitled to bring an action for damages, said action having survived him.

136.    DANIEL CODY is the Court-appointed Administrator of the Estate of JAIMESON CODY and as such brings this cause of action on behalf of the Estate of JAIMESON CODY pursuant to Illinois Revised Statutes, Chapter 110-1/2, Section 27-6, and Chapter 37, Section 439.8.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT XI.
## ILLINOIS CLAIM – NEGLIGENT SUPERVISION, RETENTION, AND TRAINING
### as to SANGAMON COUNTY; ANDREW VAN METER, SANGAMON COUNTY CHAIRMAN; SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY; LARRY BECK, JAIL SUPERINTENDENT and AVANCED CORRECTIONAL HEALTHCARE

137.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

PLAINTIFF'S EXHIBIT A
PAGE 20 OF 23

138.     Defendants Sangamon County, Sangamon County Sheriff's Department, Chairman Van Meter, Sheriff Campbell, S.I. Beck, and A.C.H., had a duty to properly supervise, retain, and train their employees and agents concerning constitutional rights of pretrial detainees such as Jaimeson Cody.

139.     Chairman Van Meter, Sheriff Campbell, S.I. Beck were the persons vested with primary authority and responsibility regarding supervision, retention, and training of employees and agents of Sangamon County and Sangamon County Sheriff's Department.

140.     Defendants Sangamon County, Sangamon County Sheriff's Department, Chairman Van Meter, Sheriff Campbell, S.I. Beck, and A.C.H., negligently trained, retained, and supervised its staff, and others, including the other various Defendants.

141.     The acts, conduct and/or omissions of said Defendants were the direct and proximate result of Mr. Cody's injuries and death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

### COUNT XII.
### ILLINOIS CLAIM – BATTERY
### as to SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; NICHOLAS ORTEGA, C.O.; JOHN B. KLING, LPN; and OTHER UNKNOWN SANGAMON COUNTY EMPLOYEES, and/or AGENTS

142.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

143.     As a proximate result of one or more of the foregoing acts or omissions, Defendants Sgt. Grigsby, C.O. K. Meyer, C.O. S. Meyer, C.O. Ortega, Nurse Kling, and Other Unknown Defendants committed a battery upon Mr. Cody by making bodily contact which was intentional, unauthorized, and grossly offensive in nature.

144.     The acts and conduct of the said Defendants were intentional, reckless, and unwarranted, without any just cause or provocation, and Defendants knew or should have known that their actions were without Mr. Cody's consent.

145.     At all times relevant to this Complaint, said Defendants acted in the course and scope of their employment with the other various Defendants.

PLAINTIFF'S EXHIBIT A
PAGE 21 OF 23

146.     As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain and humiliation, was deprived of his liberty and was otherwise damaged, injured and killed.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered in favor of the Plaintiff and against the Defendants, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

PLAINTIFF'S EXHIBIT A
PAGE 22 OF 23

## <u>JURY DEMAND</u>

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL COUNTS**

DANIEL CODY, as Administrator of the Estate of JAIMESON CODY, deceased, and as next-of-kin, Plaintiff,

By: /s/ Sharon D. Elvidge Kelley
Sharon D. Elvidge Kelley ARDC No. 6193792
AHSAN KELLEY LAW, LLC
415 South 7th Street
Springfield, Illinois  62701
Telephone:  (217)535-1000
Facsimile:  (217)727-8760
Email:  Sha@ahsahkelley.com

By: /s/ Jon D. Robinson
Jon D. Robinson, ARDC No. 2356678
BOLEN, ROBINSON & ELLIS, LLP
202 South Franklin St., 2nd Floor
Decatur, Illinois 62523
Telephone:  (217)429-4296
Facsimile:  (217)329-0034
Email:  jrobinson@brelaw.com

By: /s/ Andrew M. Wessler
Andrew M. Wessler, ARDC No. 6310462
BOLEN, ROBINSON & ELLIS, LLP
202 South Franklin St., 2nd Floor
Decatur, Illinois  62523
Telephone:  (217)429-4296
Facsimile:  (217)329-0034
Email:  awessler@brelaw.com

23