**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD, ILLINOIS**

| | | |
|---|---|---|
| DANIEL CODY, as Administrator of the Estate of JAIMESON CODY, deceased and as next-of-kin. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:22-cv-03065-SEM-KLM |
| SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, individually and as SHERIFF OF SANGAMON COUNTY; LARRY BECK, individually and as JAIL SUPERINTENDENT; SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; and NICHOLAS ORTEGA, C.O.; | ) ) ) ) ) ) ) ) | **PLAINTIFF DEMANDS TRIAL BY JURY** |
| Defendants. | ) ) | |

## THIRD AMENDED COMPLAINT

Plaintiff, DANIEL CODY, as Administrator of the Estate of JAIMESON CODY, deceased, and as next-of-kin, by and through his undersigned attorneys, makes this his Third Amended Complaint against Defendants SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, individually, and in his official capacity as SHERIFF OF SANGAMON COUNTY; LARRY BECK, individually, and in his official capacity as JAIL SUPERINTENDENT; SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; and NICHOLAS ORTEGA, C.O.; and he states as follows:

### PRELIMINARY STATEMENT AND NATURE OF CASE

1. Jaimeson Cody, a 39-year-old father of two and citizen of the United States of America and the State of Illinois, was held as a pretrial detainee at the Sangamon County Sheriff's Department at the Sangamon County Jail ("Jail") in Springfield, Illinois on April 27, 2021. Mr. Cody's belongings were confiscated at booking and his mental state rapidly deteriorated. He was placed on 24-hour observation. Several hours later, he was forcibly removed from his cell for a medical exam. When he refused the exam, he was tackled, tasered, beaten and suffocated by excess weight while he was face-down on the floor inside the Jail. He died on April 28, 2021.

2. This suit arises from multiple violations of the civil rights of Jaimeson Cody, in violation of Title 42 USC § 1983.

## JURISDICTION

3. This action is brought pursuant to 42 USC § 1983. Jurisdiction is based upon 28 USC § 1331, 1332 and 1367. Plaintiff demands a trial by jury.

## VENUE

4. The violations of civil rights alleged herein were committed within the Central District of Illinois, to-wit: in the City of Springfield, County of Sangamon, State of Illinois. This action properly lies in the United States District Court for the Central District of Illinois, Springfield Division.

## PARTIES

5. Plaintiff, DANIEL CODY, is the decedent's father and is the Court-appointed Administrator of the Estate of JAIMESON CODY. He is a resident of the County of Sangamon, State of Illinois. He brings this action on behalf of the Estate of JAIMESON CODY, for the benefit of decedent's beneficiaries and next-of-kin.

6. Decedent, Jaimeson Cody, was a U.S. Citizen and a resident of the County of Sangamon, State of Illinois, as of the date of his death on April 28, 2021.

7. Defendant, SANGAMON COUNTY SHERIFF'S DEPARTMENT, ("Sheriff's Department") is a local governmental entity with offices in Sangamon County, City of Springfield, Illinois.

8. Defendant, JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY ("Sheriff Campbell"), was a resident of Sangamon County, Illinois at the time of the events herein, and is sued individually and in his official capacity as Sheriff of Sangamon County, Illinois, because he is responsible for establishing and maintaining the policies, practices, customs, and usages of the Sheriff's Department, which includes the Jail, and because he personally participated in practices and policies which caused or contributed to the cause of Mr. Cody's death and other prior similar injury and/or deaths in the Jail.

9. Defendant, LARRY BECK, JAIL SUPERINTENDENT ("S.I. Beck"), was a resident of Sangamon County, Illinois at the time of the events herein, and is sued individually and in his official capacity as Superintendent of the Sangamon County Jail, wherein he was and is responsible for establishing and maintaining the policies and practices for the Sangamon County Sheriff's Department, and for its employees and agents within the Sangamon County Jail.

10. Defendant, SGT. CODY GRIGSBY, C.O., ("Sgt. Grigsby") was a resident of the State of Illinois at the time of the events described herein and was employed, retained and/or

contracted by the Sangamon County Sheriff's Department. He is sued in his individual and official capacities, and as an agent of said Defendant.

11. Defendant, KYLE MEYER, C.O., ("C.O. K. Meyer") was a resident of the State of Illinois at the time of the events described herein and was employed by Defendant Sangamon County Sheriff's Department. He is sued in his individual and official capacities, and as an agent of said Defendant.

12. Defendant, SCOTT MEYER, C.O., ("C.O. S. Meyer") was a resident of the State of Illinois at the time of the events described herein and was employed by Defendant Sangamon County Sheriff's Department. He is sued in his individual and official capacities, and as an agent of said Defendant.

13. Defendant, NICHOLAS ORTEGA, C.O., ("C.O. Ortega") was a resident of the State of Illinois at the time of the events described herein and was employed by Defendant Sangamon County Sheriff's Department. He is sued in his individual and official capacities, and as an agent of said Defendant.

14. Sheriff Campbell and other employees of the Sheriff's Department of Sangamon County are at times collectively referred to herein as the "Sheriff's Department Defendants."

15. At all times relevant to the matters stated in this Complaint, all Defendants acted under color of state law, and within the scope of their employment and/or agency.

## STATEMENT OF CLAIM

16. At all times relevant to the matters stated in this Complaint, there was in force and effect the Constitution of the United States which provided in relevant part as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> – Constitution of the United States, Amendment X IV

17. At all times relevant to the matters stated in this Complaint, there was in force and effect a federal law known as the Civil Rights Act of 1871 which provided in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. §1983.

18. At all times relevant to the matters stated in this Complaint, there was in force and effect certain statutes in the State of Illinois which provided in relevant part as follows:

> Sheriff custodian of courthouse and jail.
>
> He or she shall have the custody and care of the courthouse and jail of his or her county, except as is otherwise provided. 55 ILCS 5/3-6017.

* * *

> The Sheriff of each county in this State shall be the warden of the jail of the county and have the custody of all prisoners in the jail, except when otherwise provided in the "County Department of Corrections Act". The Sheriff may appoint a superintendent of the jail, and remove him at his pleasure, for whose conduct and training, he shall be responsible. The Sheriff shall also be responsible for the hiring and training of all personnel necessary to operate and maintain the jail. 730 ILCS 125/2 and 3.

* * *

> The Warden of the jail shall furnish necessary bedding, clothing, food and medical aid for all prisoners under his charge, and keep an accurate account of the same. 730 ILCS 125/17.

19. Jaimeson Cody was arrested in Divernon, Illinois, on April 27, 2021, at 01:21 by Officer Thomas Hiatt of the Divernon (Illinois) Police Department.

20. At 01:26, Officer Hiatt began transporting Mr. Cody to the Sangamon County Jail. During transport, Mr. Cody was confused why he was being arrested but made very little conversation.

21. At 01:46, Mr. Cody was delivered to the Sangamon County Jail, and Officer Hiatt placed Mr. Cody in the care, custody, charge, and control of the Sangamon County Jail.

22. At booking, Mr. Cody's belongings were confiscated, and he was searched. Mr. Cody was provided with a Jail inmate uniform and placed alone in Cell I-9 of the Jail by Correctional Officer B. Ferro ("C.O. Ferro").

23. The Sheriff's Department Defendants were aware, or should have been aware, of Mr. Cody's prior drug history. Despite this knowledge, Mr. Cody was not seen or examined by any medical personnel at the time of his booking.

24. After being placed alone in Cell I-9, Mr. Cody was observed by the Defendants present as shaky, sweating profusely, pacing around, confused, and displaying erratic behavior.

25. At or around 12:30, C.O. Ferro took Mr. Cody to the medical unit within the Jail to be provided medical care and treatment. In the medical unit, the Defendants present were advised

of Mr. Cody's symptoms and behavior, and he was given an assessment by employees or agents of the Jail.

26. After being medically assessed, Mr. Cody was placed in cell I-1. He was designated in the Jail Shift Activity Report as "H/R [HIGH RISK] MH [Mental Health]". As a result, the Defendants present placed Mr. Cody on required high risk mental health checks to be performed every 15 minutes.

27. Despite designating him to have high risk mental health issues, Mr. Cody was not evaluated or checked upon every 15 minutes, as shown by the Shift Activity Report.

28. At or about 23:45, C.O. S. Meyer observed blood smeared in Mr. Cody's cell and on his clothing; that he had superficial cuts to his hands and wrist areas; and that Mr. Cody was covered in sweat and mumbling to himself about S.W.A.T. and being shot in his head.

29. C.O. S. Meyer notified Defendant Grigsby of his observations of Mr. Cody.

30. Defendant Grigsby observed Mr. Cody, and he contacted the Jail Nurse on duty to come to Mr. Cody's cell.

31. When the Jail Nurse arrived at the cell, he observed through the closed door blood on Mr. Cody's shirt and some on the wall of his cell.

32. Defendants C.O. S. Meyers, K. Meyers, and Sgt. Grigsby, along with Nurse John Kling then opened the door to Mr. Cody's cell, apparently to investigate the situation.

33. Mr. Cody's was refusing medical care at this time, but Defendants Meyers, Grigsby, and others ordered him to come out of his cell.

34. According to the video released by the Sangamon County Sheriff's Office to the public and to Plaintiffs in their initial disclosure, Mr. Cody exited his cell calmly until he saw the restraint chair and became agitated, clearly refusing the medical assisstance.

35. Mr. Cody made no attempt to flee.

36. Mr. Cody did not provoke any of the Defendants present.

37. Despite his refusal of medical care, Defendants K. Meyers, S. Meyers, and Grigsby, then entered Mr. Cody's cell and began to forcibly remove him. During this altercation, the Defendants present tasered Mr. Cody and threw him down onto the concrete Jail floor outside his cell.

38. After being tasered and while on the concrete Jail floor, he was tasered again and placed face down in a prone position on the floor.

39. Two or three of the Defendants present placed the weight of their bodies (totaling more than 700 pounds) on Mr. Cody's neck, back and legs. He complained several times that he could not breathe, but his pleas were ignored.

40. While he was still face down on the concrete Jail floor and unable to breathe, the Defendants who were present ordered him to put his arms behind his back. Because of his condition and/or position, Mr. Cody could not comply, and Defendants applied their combined body weight and tasered him until he was motionless.

41. While motionless, his hands were placed in cuffs behind his back, and then the correctional officers climbed off of his body.

42. Per the ISP Investigative report, after removing themselves from the body, the Defendants who were present stopped to "collect" themselves, and began a discussion about how to get Jaimeson Cody into a restraint chair. During this discussion, Mr. Cody remained motionless and face down on the concrete Jail floor with his hands cuffed behind his back.

43. The Defendants present eventually returned to Mr. Cody's body and either observed or were advised by another CO, that his earlobe was purple and his face was blue and purple.

44. The Defendants present shook Mr. Cody for a response, and after observing that he was not breathing, they removed the cuffs and rolled him onto his back.

45. Several Defendants, including Ortega and several unnamed officers, stood by and watched the events described above, but they did nothing to intervene or prevent the use of the excessive force used which caused this death, even though Mr. Cody insisted at least twice, according to witness statement, that he could not breathe.

46. An ambulance was called, and Mr. Cody was transported to Springfield Memorial Medical Center where he was pronounced dead at 00:32 on April 28, 2021.

47. On April 28, 2021, an autopsy was conducted, by forensic pathologist, Nathaniel Patterson, M.D., who identified the following injuries to Mr. Cody:

    a. Blunt force injuries of the head and neck;
    b. Blunt force injuries of the trunk;
    c. Various contusions of the head, scalp, neck, face, back and extremities;
    d. Electrical weapon control wounds of the thighs;
    e. Numerous other abrasions;
    f. Erythema of the skin of the chest and upper abdomen; and
    g. Self-inflicted, superficial abrasions to the left forearm and wrist.

48. Dr. Patterson concluded that Mr. Cody's death was caused by restraint asphyxia.

49. The investigation by Sangamon County Coroner, Jim Allmon, resulted in a determination that Mr. Cody's death was a homicide.

50. A grainy, low-quality, "stacked" video was released to the public by Sheriff Campbell and Superintendent Beck after negative media coverage and complaints from the public. After a video forensic expert removed the stacked videos from atop each other, it was discovered the video has a 90+ second gap in coverage.

51. Prior to April 27, 2021, each of the Sheriff's Department Defendants had actual knowledge of one or more of the following facts:

   a. compressional force and tasers should not be used in combination with restraints that could restrict breathing;
   b. sitting on the neck or back of a person they are trying to restrain can lead to great bodily harm or death;
   c. tasers should not be used on individuals who are no threat of flight or immediate harm to others;
   d. since 2006, the U.S. Department of Justice, in conjunction with the Police Executive Research Forum ("PERF") published standards for the use of Conducted Energy Devices (CED's), which include the taser devices used on Mr. Cody, which direct that: "Following a CED activation, officers should use a restraint technique that does not impair respiration;
   e. since March 1, 2007, Taser International, which manufactured the taser devices used by Defendants on Mr. Cody, had published product warnings and updates to law enforcement agencies for use of its taser devices, which warned: "Avoid torturous or other misuse," and ". . . it is conceivable that the muscle contractions may impair a subject's ability to breathe," referring to the use of a taser device;
   f. as far back as 2007, there have been other known violations of the Constitutional rights by Sangamon County Sheriff's Officers/Deputies and of pretrial detainees in the Sangamon County Jail resulting in injury and/or death by positional asphyxia;
   g. for several years there has been a clear pattern of treatment of detainees resulting in severe injury and/or death by excessive compressional force (asphyxia) in the Sangamon County Jail;
   h. for several years there has been a clear pattern of abusing pretrial detainees resulting in injury and/or death after tasers were applied within the Sangamon County Jail;
   i. for several years the Sheriff's Department Defendants have used excessive weight on face-down inmates as a practice which has caused or contributed to the cause of other inmate injury and/or deaths in the Jail; and
   j. the practice is so widespread for so long as to constitute a custom or policy within the Jail and Sheriff's Department.

52. Defendants, Campbell and Beck, each have specific, direct, and personal knowledge of prior pretrial detainee injury and/or deaths in and outside the Jail that resulted from excessive tasering, excessive use of force and/or excessive weight applied to the back of a face-down inmate. (See *Skube v. Williamson*, 2015 U.S. Dist. LEXIS 24362 (C.D.Ill.); *Haley v. Smith*, 2014, 3:14-cv-03055-CSB-DGB; *Burns v. Williamson*, 2012, USDC 2011-cv-03020; and *Carlock v. Williamson*, 2008 (2008-cv-03075).

53. It is Defendants duty to know the danger of positional asphyxia and the danger of tasering an individual restrained, face down with restricted respirations, yet they allowed the COs under their supervision to violate SCSO policy regarding restraint by allowing the severely obese Officers lethal restraint technique using their body weight to restrain Jaimeson Cody.

54. Despite this knowledge, Defendants, Campbell, and Beck, knowingly and recklessly approved and allowed the continuation of practices, which became a custom or policy that directly and proximately caused the death of Mr. Cody on April 28, 2021.

55. Defendants ignored a history of Jail injury and/or deaths when they failed to provide the supervision and training needed to avoid injury and/or death for Jail inmates under the circumstances described above.

56. Defendants were deliberately indifferent to Mr. Cody's Constitutional rights when they failed and/or refused to properly train, supervise, and discipline their employees and/or agents to avoid the use of excessive force, and further refused to implement policy improvements.

57. Defendants were deliberately indifferent and acting in reckless disregard to the known risks of serious injury or death to pretrial detainees such as Mr. Cody.

58. The acts or omissions of Defendants described above were purposeful, knowing, and reckless, and they were objectively unreasonable under the circumstances.

59. Each of the Defendants, by their own acts or omissions described above, participated or acquiesced in the violations of Mr. Cody's Constitutional rights.

60. The Court has authority pursuant to 42 U.S.C. § 1983 to award appropriate actual, consequential, compensatory, and punitive damages; and it has authority under 42 U.S.C. § 1988 to award attorney's fees and costs to successful civil rights plaintiffs.

## CAUSES OF ACTION

### COUNT I.
### USE OF EXCESSIVE/DEADLY FORCE
**Deprivation of Fourteenth Amendment Rights and 42 U.S.C. §1983 against SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, in his official capacity as SHERIFF OF SANGAMON COUNTY; LARRY BECK, in his official capacity as JAIL SUPERINTENDENT; SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; and NICHOLAS ORTEGA, C.O.**

61. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

62. Each of the named Defendants had a duty to refrain from personally approving of or promoting the use of excessive force against Mr. Cody.

63. Defendants Campbell, Beck, Grigsby, Kyle Meyer, Scott Meyer, and Ortega had a duty to prevent others from using excessive or deadly force against Mr. Cody.

64. Each of the named Defendants were aware that significant weight on the back of a face-down inmate is likely to cause death or great bodily harm.

65. Each of the Sheriff Department Defendants knew, or should have known, that Mr. Cody was under the circumstances not a threat to them or himself when they tasered him several times and applied weight to his back while he was face down, restrained.

66. The force Defendants used was likely to cause great bodily harm or death and did cause Mr. Cody's death, and this was known or should have been known by the Defendants.

67. The Defendants and other unknown COs present at the scene on April 28, 2021, allowed their co-defendants to use excessive force on Mr. Cody because they failed to intervene to prevent his injury and death.

68. The conduct and actions of the Defendants, acting under color of law, were objectively unreasonable, malicious, and deliberately indifferent to Mr. Cody's safety and to his Constitutional rights under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

69. Each of the Defendants personally knew that Jail inmates treated like Mr. Cody faced a substantial risk of harm; and they disregarded that risk by failing to take reasonable measures to abate it. As a direct and proximate result of the foregoing acts and omissions by the Defendants, Mr. Cody was subjected to physical and emotional pain, suffering, torture and death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for the Plaintiff and against Defendants, the SANGAMON COUNTY SHERIFF'S DEPARTMENT; JACK CAMPBELL, as SHERIFF OF SANGAMON COUNTY; LARRY BECK, as JAIL SUPERINTENDENT; SGT. CODY GRIGSBY, C.O.; KYLE MEYER, C.O.; SCOTT MEYER, C.O.; and NICHOLAS ORTEGA, C.O.; for the sum in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs.

# COUNT II.
# MONELL CLAIM FOR USE OF EXCESSIVE FORCE
## as to JACK CAMPBELL, individually, and as SHERIFF,
## and LARRY BECK, individually, and as JAIL SUPERINTENDENT

70. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

71. At all times relevant to this Complaint, Jack Campbell was Sheriff of Sangamon County, and as such he maintained one or more of the following policies or practices that were so widespread and well-settled as to constitute an accepted custom and practice:

   a. allowing, and even encouraging, the use of tasers by correctional officers in circumstances where there was little or no threat of flight or immediate danger for others inside the Jail;
   b. allowing the use of restraint techniques that restrict breathing;
   c. allowing correctional officers to apply the weight of their bodies to the torso of inmates who are face-down inside the Jail;
   d. allowing the use of tasers on inmates inside the Jail who are already restrained by cuffs, shackles or otherwise by correctional officers; and
   e. failure to enforce safe and reasonable standards and/or Jail Policies of conduct by COs using methods of restraint.

72. The above-described well settled practices, inside the Jail were established and maintained by Sheriff Campbell and Superintendent Beck, who were the persons with final policymaking authority.

73. The above-described practices or customs caused the injury and deaths of several inmates before Mr. Cody; and this same policy caused his death.

74. The injuries and death were a direct and foreseeable consequence of the policies and practices above described. As such, said Defendants are individually liable for the damages suffered.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for the Plaintiff and against Defendants JACK CAMPBELL, individually, and as SHERIFF OF SANGAMON COUNTY; and LARRY BECK, individually, and as JAIL SUPERINTENDENT, jointly and severally, for an amount in excess of $50,000,000 in actual damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT III.
## FAILURE TO INTERVENE
### 42 U.S.C. §1983 against SGT. CODY GRIGSBY, C.O., KYLE MEYER, C.O., SCOTT MEYER, C.O., and NICHOLAS ORTEGA, C.O.

75. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

76. Defendants Sgt. Grigsby, C.O. K. Meyer, C.O. S. Meyer, and C.O. Ortega had reason to know that excessive force was being used upon Mr. Cody.

77. As a proximate result of one or more of the foregoing acts or omissions, Defendants Sgt. Grigsby, C.O. K. Meyer, C.O. S. Meyer, C.O. Ortega, failed to take reasonable steps to attempt to intervene, prevent, or discourage the unlawful force used upon Mr. Cody as described herein.

78. The conduct of said Defendants was intentional and/or reckless under the circumstances.

79. At all times relevant to this Complaint, Defendants acted in the course and scope of their employment.

80. As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain; he was tortured; he was deprived of his liberty; and he was ultimately killed.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for Plaintiff and against Defendants, SGT. CODY GRIGSBY, C.O., KYLE MEYER, C.O., SCOTT MEYER, C.O., and NICHOLAS ORTEGA, C.O., jointly and severally, for an amount in excess of $50,000,000 for compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT IV.
## DELIBERATE INDIFFERENCE IN THE HIRING and RETENTION
### 42 U.S.C. §1983 against JACK CAMPBELL, LARRY BECK, and the SHERIFF'S DEPARTMENT

81. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

82. Defendants Campbell, Beck, and the Sheriff's Department maintained a practice or policy of deliberate indifferences in the hiring and retention of employees who perform their duties by resorting to the use of excessive compression force against face-down pretrial detainees such

as Mr. Cody, when they knew that those employees would come in contact with Jail inmates who posed no imminent threat to them.

83. Sheriff Campbell and S.I. Beck were the persons vested with primary and final authority and responsibility for the hiring and retention of employees of the Sangamon County Sheriff's Department.

84. Defendants Campbell and Beck hired and retained Jail staff that caused Mr. Cody's death, and this was deliberately indifferent to Mr. Cody's Constitutional rights for one or more of the following reasons:

   a. Hiring and retaining correctional officers who were morbidly obese and physically unable to perform their duties in a reasonably safe manner is unreasonable and reckless;
   b. Hiring and retaining correctional officers who were not properly trained in the use of taser devices against pretrial detainees in the Jail is unreasonable and reckless when the inmates are already in a controlled environment; and
   c. Hiring and retaining correctional officers who apply weight to the back of face-down inmates in the Jail.
   d. Hiring and retaining correctional officers who refuse to intervene to prevent Constitutional violations against pretrial detainees caused by other employees.
   e. Hiring and retaining correctional officers without training them to intervene to prevent the Constitutional violations against pretrial detainees caused by other employees in the Jail;

85. Defendants Campbell and Beck each knew about these hiring and retention practices, but they knowingly facilitated and condoned them.

86. The unlawful use of excessive force against pretrial detainees such as Mr. Cody as described herein is and was a known consequence of Defendants' deliberate hiring and retention practices because it had happened several times before Mr. Cody's death, and these Defendants knew about the prior similar injury and/or deaths.

87. Defendants Campbell and Beck knowingly hired and retained correctional officers who were likely to repeat dangerous conduct using compression force and tasers on face-down inmates inside the Jail, because they were not trained or supervised to avoid a repeat of prior similar occurrences.

88. These policies, practices, acts and omissions of Campbell and Beck were a direct and proximate cause of Mr. Cody's physical and emotional pain and his ultimate death.

89. At all times relevant to this Complaint, Defendants Campbell and Beck acted in the course and scope of their employment by the Sangamon County Sheriff's Department.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for Plaintiff and against Defendants, JACK CAMPBELL, LARRY BECK, and the SHERIFF'S

DEPARTMENT, jointly and severally, for an amount in excess of $50,000,000 for damages, compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT V.
### DELIBERATE INDIFFERENCE IN THE SUPERVISION and TRAINING
### 42 U.S.C. §1983 against JACK CAMPBELL, LARRY BECK, and the SHERIFF'S DEPARTMENT

90. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

91. Defendants Campbell and Beck maintained a practice or policy of deliberate indifference in the supervision and training of Jail correctional officers to avoid the use of excessive and dangerous compression force on face-down Jail inmates, knowing that the correctional officers would come into contact with Jail inmates who posed no threat to them.

92. Campbell and Beck were the Sheriff Department officers vested with primary authority and responsibility for the supervision and training of employees of the Jail.

93. Defendants Sheriff Campbell and Superintendent Beck were deliberately indifferent to the Constitutional rights of Jail inmates, including Mr. Cody, when they failed to properly train and supervise the correctional officers, especially after prior similar injury and/or deaths by compressional asphyxia had already occurred at the hands of Sangamon County Sheriff's COs and Deputies (See *Carlock* and *Burns*.)

94. These practices, policies, acts and omissions of Defendants Campbell and Beck were a direct and proximate cause of Mr. Cody's injuries and death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment for Plaintiff and against Defendants, JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY and LARRY BECK, JAIL SUPERINTENDENT, jointly and severally, for an amount in excess of $50,000,000 for compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

# COUNT VI.
## STATE CLAIM – USE OF EXCESSIVE FORCE
**against LARRY BECK, JAIL SUPERINTENDENT, SGT. CODY GRIGSBY, C.O., KYLE MEYER, C.O., SCOTT MEYER, C.O., and NICHOLAS ORTEGA, C.O**

95. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

96. The Defendants, including Sgt. Grigsby, C.O. K. Meyer, C.O. S. Meyer, C.O. and Ortega, C.O., were present when Mr. Cody was suffocated inside the Jail, and each of them had a duty not to use excessive force against Mr. Cody.

97. The Defendants also had a duty to prevent others present from using excessive or deadly force against Mr. Cody.

98. The Defendants were aware, or should have been aware, that force which is unreasonably harsh and cruel, and likely to cause death or great bodily harm, is excessive.

99. The Defendants knew, or reasonably should have known, that Mr. Cody was becoming increasingly ill and suffering from a declining mental health state, but, despite this knowledge, Defendants present with Mr. Cody used excessive and/or deadly force upon him.

100. The force Defendants used against Mr. Cody was likely to cause him great bodily harm or death.

101. The Defendants present with Mr. Cody allowed their co-defendants to use excessive force on Mr. Cody, and they failed to intervene to prevent Mr. Cody's unnecessary physical abuse, suffering, and death.

102. The conduct and actions of Defendants, acting under color of law, were objectively unreasonable, intentional, willful, malicious, and deliberately indifferent to Mr. Cody's health; and it caused specific and serious physical and emotional pain and suffering in violation of his rights under the Constitution and laws of the State of Illinois.

103. Defendants knew Mr. Cody faced a substantial risk of harm as an inmate, and they disregarded that risk by failing to take reasonable measures to abate it.

104. As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain and suffering, torture, and ultimately death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for Plaintiff and against Defendants, LARRY BECK, JAIL SUPERINTENDENT, SGT. CODY GRIGSBY, C.O., KYLE MEYER, C.O., SCOTT MEYER, C.O., and NICHOLAS ORTEGA, C.O., jointly

and severally, for an amount in excess of $50,000,000 for compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT VII.
### STATE CLAIM – FAILURE TO INTERVENE
### against SGT. CODY GRIGSBY, C.O., KYLE MEYER, C.O., SCOTT MEYER, C.O., and NICHOLAS ORTEGA, C.O.

105. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

106. Defendants Sgt. Grigsby, C.O., K. Meyer, C.O.. S. Meyer, C.O. and Ortega, C.O., were present with Mr. Cody and had reason to know that excessive force was being used upon him.

107. As a proximate result of one or more of the foregoing acts or omissions, Defendants Sgt. Grigsby, C.O,. K. Meyer, C.O., S. Meyer, C.O. and Ortega, C.O., failed to take reasonable steps to attempt to intervene, prevent, or discourage the unlawful force used upon Mr. Cody as described above.

108. The acts and conduct of these Defendants were intentional, reckless, and unwarranted, without any just cause or provocation.

109. At all times relevant to this Complaint, these Defendants acted in the course and scope of their employment.

110. As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain, was deprived of his liberty, and was injured and ultimately killed.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for the Plaintiff and against Defendants, SGT. CODY GRIGSBY, C.O., KYLE MEYER, C.O., SCOTT MEYER, C.O., and NICHOLAS ORTEGA, C.O., jointly and severally, for an amount in excess of $50,000,000 for compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT VIII.
### STATE CLAIM – NEGLIGENT HIRING and RETENTION
### against JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY, LARRY BECK, JAIL SUPERINTENDENT, and the SHERIFF'S DEPARTMENT

111. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

112. Defendants Campbell and Beck each had a duty to properly hire and retain employees who could perform their duties without resorting to use of excessive force against pretrial detainees such as Mr. Cody.

113. Defendants Campbell and Beck were the persons vested with primary authority and responsibility regarding hiring and retention of employees and agents of Sangamon County Sheriff's Department and Jail.

114. Defendants Campbell and Beck negligently hired and retained its staff, and others, including the other named Defendants in the following ways:

a. Hiring and retaining correctional officers who were severely obese and physically unable to perform their duties in a reasonably safe manner;
b. Hiring and retaining correctional officers who could use their excessive weight as a lethal weapon and for punishment of pretrial detainees;
c. Hiring and retaining correctional officers without properly training them not to use taser devices as weapons for punishment against pretrial detainees in the Jail;
d. Hiring and retaining correctional officers who could use their excessive weight and taser devices in combination as weapons and for punishment of pretrial detainees; and
e. Hiring and retaining correctional officers without training them to intervene to prevent the Constitutional violations against pretrial detainees caused by other employees in the Jail;

115. Sheriff Campbell and S.I. Beck were responsible for these hiring and retention practices without proper training, and they deliberately facilitated or condoned them.

116. The unlawful use of excessive force used against pretrial detainees, including Mr. Cody, was an obvious consequence of Defendants hiring and retention practices.

117. Defendants' hiring and retention practices were a direct and proximate cause of Mr. Cody's injuries and death.

118. At all times relevant to this Complaint, Defendants Campbell and Beck acted in the course and scope of their employment by the Sangamon County Sheriff's Department.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is for Plaintiff and against Defendants JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY, LARRY BECK, JAIL SUPERINTENDENT, and the SHERIFF'S DEPARTMENT, jointly and severally, for an amount in excess of $50,000,000 for compensatory damages, and for punitive damages, attorney's fees, costs, and for any other and further relief deemed just and proper.

## COUNT IX.
## STATE CLAIM – NEGLIGENT SUPERVISION and TRAINING
### against JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY, LARRY BECK, JAIL SUPERINTENDENT, and the SHERIFF'S DEPARTMENT

119. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

120. Defendants Campbell and Beck, had a duty to supervise and train their employees and agents concerning Constitutional rights of pretrial detainees, including Mr. Cody.

121. Sheriff Campbell and Superintendent Beck were the persons vested with primary authority and responsibility regarding supervision and training of employees and agents of the Sangamon County Sheriff's Department and Jail.

122. Defendants Campbell and Beck, negligently supervised and trained its Officers, Deputies and staff, including the Defendants identified herein.

123. The acts and omissions of said Defendants were the direct and proximate cause of Mr. Cody's injuries and death.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for Plaintiff and against Defendants, JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY, LARRY BECK, JAIL SUPERINTENDENT, and the SHERIFF'S DEPARTMENT, jointly and severally, for an amount in excess of $50,000,000 for compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## COUNT X.
## STATAE CLAIM – BATTERY
### against SGT. CODY GRIGSBY, C.O., KYLE MEYER, C.O., SCOTT MEYER, C.O., and NICHOLAS ORTEGA, C.O.

124. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

125. As a proximate result of one or more of the foregoing acts or omissions, Defendants, Sgt. Grigsby, C.O., K. Meyer, C.O., S. Meyer, C.O., and Ortega, C.O., committed a battery upon Mr. Cody by making bodily contact which was intentional, unauthorized, and grossly offensive in nature.

126. The acts and conduct of the said Defendants were intentional or reckless and without any just cause or provocation; and Defendants knew Mr. Cody did not consent to them.

127. At all times relevant to this Complaint, the Defendants acted in the course and scope of their employment.

128. As a direct and proximate result of the foregoing, Mr. Cody was subjected to great physical and emotional pain, torture and humiliation, was deprived of his liberty and was otherwise damaged, injured and killed.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for Plaintiff and against Defendants, SGT. CODY GRIGSBY, C.O., KYLE MEYER, C.O., SCOTT MEYER, C.O., and NICHOLAS ORTEGA, C.O., jointly and severally, for an amount in excess of $50,000,000 for compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

### COUNT XI.
### STATE CLAIM – INSTITUTIONAL NEGLIGENCE
### against JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY, LARRY BECK, JAIL SUPERINTENDENT, and the SHERIFF'S DEPARTMENT

129. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

130. At all times relevant to this Complaint, the Sangamon County Sheriff's Department was the primary institution responsible for the care, custody, and control of pretrial detainees in the Sangamon County Jail.

131. At all times relevant to this Complaint, Sheriff Campbell and Superintendent Beck were vested with primary authority and responsibility regarding policies, practices, and customs of the Sangamon County Sheriff's Department and Jail.

132. At all times relevant to this Complaint, these Defendants had an independent institutional duty to supervise the appropriate and safe use of tasers and control tactics, including tasers and compressional force by their employees within the Sangamon County Jail.

133. At all times relevant to this Complaint, these Defendants allowed policies and practices for excessive use of tasers and control tactics, including compressional force on face-down detainees in the Sangamon County Jail.

134. As a result of the above-described policies and practices, the use of excessive force within the Jail was not properly monitored, and such misconduct was tolerated and even encouraged, even though it was known by them to have caused injuries and deaths in prior similar circumstances.

135. These policies and practices created an unsafe and dangerous environment for pretrial detainees within the Sangamon County Jail; and they were a proximate cause of Mr. Cody's injuries and death as described above.

**WHEREFORE**, the Plaintiff, DANIEL CODY, prays that Judgment is entered for Plaintiff and against Defendants, JACK CAMPBELL, SHERIFF OF SANGAMON COUNTY, LARRY BECK, JAIL SUPERINTENDENT, and the SHERIFF'S DEPARTMENT, jointly and severally, for an amount in excess of $50,000,000 for compensatory damages, punitive damages, attorney's fees and costs, and for any other and further relief deemed just and proper.

## JURY DEMAND

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL COUNTS**

**DANIEL CODY, as Administrator of the Estate of JAIMESON CODY, deceased, and as next-of-kin,** Plaintiff,

By: /s/ Sharon D. Elvidge Kelley
Sharon D. Elvidge Kelley ARDC No. 6193792
AHSAN KELLEY LAW, LLC
415 South 7th Street
Springfield, Illinois 62701
Telephone: (217)535-1000
Facsimile: (217)727-8760
Email: Sha@ahsahkelley.com

By: /s/ Jon D. Robinson
Jon D. Robinson, ARDC No. 2356678
BOLEN, ROBINSON & ELLIS, LLP
202 South Franklin St., 2nd Floor
Decatur, Illinois 62523
Telephone: (217)429-4296
Facsimile: (217)329-0034
Email: jrobinson@brelaw.com

By: /s/ Andrew M. Wessler
Andrew M. Wessler, ARDC No. 6310462
BOLEN, ROBINSON & ELLIS, LLP
202 South Franklin St., 2nd Floor
Decatur, Illinois 62523
Telephone: (217)429-4296
Facsimile: (217)329-0034
Email: awessler@brelaw.com

# CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I caused a copy of the foregoing document to be served this 26th day of October 2023, upon the following:

Betsy Ann Wirth:	bwirth@quinnjohnston.com; abedinger@quinnjohnston.com; jsisson@quinnjohnston.com

Dylan Grady:	dgrady@bhslaw.com; calexander@bhslaw.com; jfuchs@bhslaw.com; vkennedy@bhslaw.com

Peter R Jennetten:	pjennetten@quinnjohnston.com; kpendry@quinnjohnston.com


(X)	Via electronic filing with the Clerk of the Court using the CM/ECF system
(X)	By emailing a copy to whom it is directed at their last known e-mail address.

By: /s/ Sharon D. Elvidge Kelley
Sharon D. Elvidge Kelley ARDC No. 6193792